**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) | |
| DANIEL MENOHER, | ) | |
| | ) | Civil Action No. 19-855 |
| Plaintiff, | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| v. | ) | Re: ECF No. 56 |
| | ) | |
| FPOLISOLUTIONS, LLC, and CESARE | ) | |
| FREPOLI, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

This is a *qui tam* action brought on behalf of the United States of America by Plaintiff-Relator Daniel Menoher ("Relator"), under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, *as amended.* Relator alleges that FPoliSolutions, LLC ("FPoli"), and Cesare Frepoli ("Frepoli") (collectively, "Defendants") violated the FCA by knowingly submitting false claims to the federal government for work performed in connection with awards and federal contracts with the United States Department of Energy ("DOE").

Presently before the Court is Defendants' Motion to Dismiss First Amended Complaint, ECF No. 56, asserting that the Amended Complaint fails to meet pleading requirements and fails to state a claim for relief. For the reasons that follow, the Motion to Dismiss is denied.[1]

## I.     FACTUAL BACKGROUND

At this stage of the litigation, the factual allegations in the First Amended Complaint are taken as true, and all reasonable inferences are drawn in Relator's favor. Malleus v. George, 641

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case. ECF Nos. 43, 44 and 47.

F.3d 560, 563 (3d Cir. 2011).   Therefore, the essential facts, derived from the First Amended Complaint are as follows.

Frepoli is FPoli's sole owner, and on its behalf submitted several applications for awards and contracts with the DOE. ECF No. 50 ¶ 6. Relator worked as a technical business development director for Defendants during the period July 2016 through May 2019.  Id. ¶ 7.

Coinciding with Relator's employment,  FPoli received about $3.4 million from the DOE under five Small Business Innovation Research ("SBIR") awards; about $80,000 under a subcontract with the DOE's Idaho National Laboratory ("INL");  and was awarded about $375,000 in matching funds as a private business partner in two Technology Commercial Fund ("TCF") projects.  Id. ¶¶ 21-24.  To obtain each award or contract, FPoli certified to DOE that its financial management system met the standards set forth in 2 C.F.R § 200.302, requiring the ability to trace all funds "to a level of expenditures adequate to establish that such funds have been used according to the Federal statutes, regulations, and the terms and conditions of the Federal award."  2 C.F.R. § 200.302(a); ECF No. 50 ¶ 42.

Relator alleges that during the performance of the phased SBIR awards and INL subcontracts, Defendants submitted invoices or claims for payment to the United States, setting forth costs incurred for each quarter under a relevant award and phase.  The total amounts claimed on each invoice or financial report were paid by the United States. Id. ¶¶ 27-33.  Defendants also made representations to the DOE that while working on each private partner TCF project, FPoli made required in-kind contributions, and FPoli employees spent the claimed numbers of hours working on the TCF projects.  Id. ¶ 34. Defendants' invoices and claims for payment certified that the labor costs claimed on each award or contract were for work performed as stated and that the work related to the award to which it was charged.  Id. ¶ 42.

As pled, contrary to their express certifications, Defendants claimed labor costs for time spent on unrelated projects and funds expended for purposes other than DOE awards.  Id. ¶ 48. Defendants also did not possess a financial management system compliant with its certification. Id. ¶ 49.

Relator provides details of the scheme and examples of instances when Defendants manipulated timekeeping records by falsely entering employee work hours with billing codes for federal award projects, although the time claimed was not spent on DOE projects.  Id. ¶ 50. "Frepoli instructed the employees to record their time falsely, by directing them to assign a specific number of hours in Toggl [FPoli's timekeeping program] to a billing code for a specific federal project, and by directing them, if they had already recorded their time in Toggl to one billing code, to change their entry and assign it to another billing code for a federal project, although in both cases, the employee had not in fact worked those hours on the federal project and the hours were not allowable on the federal project." Id. ¶ 52.  Once employees manipulated the entries, either Frepoli or an FPoli employee created a separate log of labor hours based on the falsified Toggl entries to support invoices and claims submitted for payment to the United States.

Defendants allegedly conducted this scheme regularly, from 2016 through 2021, on every award and subcontract identified in the Amended Complaint.  Relator provides eight specific examples of manipulated timekeeping and falsified claims for payment.  The examples include:

(1) On or about July 31, 2018, Defendant Frepoli and two FPoli employees traveled to Bloomsberg, Pennsylvania, to explore FPoli's potential investment in or purchase of a private company called "APT."  At 6:37 AM the next morning, August 1, 2018, before the employees had recorded their time in Toggl, Defendant Frepoli directed each employee to record in Toggl a specific number of hours from the APT visit, and directed one to assign his hours to the RAVEN SBIR billing code, and the other to assign his hours to a different billing code for a Department of Defense ("DOD") subcontract.  The APT visit was unrelated to the RAVEN SBIR project or the DOD subcontract.  However, the employees did as Defendant Frepoli directed.  Defendant Frepoli, or an

employee at his direction, then used the falsified Toggl entries to submit a claim for the falsified and unallowable hours under the RAVEN SIBR award, which the United States paid. Id. ¶ 58.

(2) On or about March 6, 2019, Defendant Frepoli emailed an FPoli employee that 'moving forward (including this week), stop charging to SBIR04 [EMRALD SBIR] until further notice and charge to RISA so we can improve a little the cash.' Defendant Frepoli issued this instruction without regard to the actual work the employee was doing; that is, he did not mean for the employee to stop working on the EMRALD SBIR project, he meant that, no matter what work the employee was doing, he should charge to the INL RISA subcontract. The employee did as directed. Defendant Frepoli, or an FPoli employee at his direction, then used the falsified Toggl entry to submit a claim for the employee's falsified and unallowable hours under the INL RISA subcontract, which the United States paid. Id. ¶ 62.

(3) In or around the final two weeks of January 2019, an FPoli employee spent time developing business for FPoli and recorded his hours in Toggl accordingly, as "C-BDEVEL." Approximately one to two weeks later, on or about January 30, 2019, at 7:36 AM, Defendant Frepoli directed the employee to "go back and change your C-BDEVEL, to the TCF last week and ask Lana to rerun the report … do the same this week for the TISA[RISA] proposal time." The business development time was unrelated to the TCF or RISA projects. However, the employee did as directed. Defendants or FPoli employees at Defendant Frepoli's direction then represented to the DOE that FPoli had spent the committed hours on the TCF project, when in fact they had not. Id. ¶ 65.

Relator alleges that Defendants concealed much of their fraudulent conduct by manipulating billing codes on future or unrelated matters. For example, after a DOE contract award was exhausted for one calendar year, Frepoli instructed his employees to use a specific billing code with a nonspecific activity, so that FPoli could bill the time in the next calendar year. Id. ¶ 67. Employees complained to each other that it was difficult to maintain records without evident discrepancies, but Frepoli wanted "the employee to 'keep clean records' so that his fraud would not be exposed." Id. ¶ 68.

In summary, Relator asserts that Defendants knowingly submitted false claims and certifications for federally funded DOE contracts and awards, and that the DOE paid the full

amounts of the labor costs claimed relying on Defendants' representations.  This resulted in payment of funds for labor costs that Defendants did not expend on DOE awards and that were unsupported by a compliant financial management system.  Id. ¶ 72.

## II.    PROCEDURAL BACKGROUND

Relator filed this case under seal on July 17, 2019, and the case remained under seal while the United States evaluated whether to intervene in Relator's *qui tam* action.  ECF No. 1.  On June 30, 2020, the United States filed a Notice with the Court that it was declining to intervene.  ECF No. 9. On July 1, 2020, the Court ordered that Relator's Complaint be unsealed,  with all other contents of the Court's file remaining under seal, except for the Notice and  matters occurring after the date of the Order.   ECF No. 10.   Upon reassignment of this action to the undersigned, Defendants filed a motion to dismiss.  ECF No. 33.  Relator followed with a motion for leave to file an amended complaint, which the Court granted.  ECF Nos. 48, 49.  On March 2, 2021, Relator filed his First Amended Complaint, and Defendants filed the pending Motion to Dismiss.  ECF Nos. 50, 56.  Relator has filed a Response to the Motion to Dismiss, and Defendants have filed their Reply.  ECF Nos. 59, 60.  The pending Motion to Dismiss is now ripe for resolution.

## III.    STANDARD OF REVIEW

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." "[D]etailed pleading is not generally required." Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016). Rather, the rules require "'only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotations omitted). Thus, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on

its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

In assessing the sufficiency of a complaint, the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678; see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice.  The complaint therefore "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim."). Id. at 233, 234.

An FCA complaint must also meet the heightened pleading standard in Rule 9(b) of the Federal Rules of Civil Procedure.  Universal Health Servs., Inc. v. United States ex rel. Escobar, ___ U.S. ___, 136 S. Ct. 1989, 2004 n.6 (2016)("Escobar"). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity, the circumstances constituting fraud or

mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III.   DISCUSSION

### A.   The False Claims Act

"The primary purpose of the FCA is to indemnify the government – through its restitutionary penalty provisions – against losses caused by a defendant's fraud." United States ex rel. Richards v. R & T Investments LLC, 29 F. Supp. 3d 553, 560 (W.D. Pa. 2014). Thus, "[t]he [FCA] imposes civil liability for making a false or fraudulent 'claim,' or a false record or statement material to such a claim, to obtain payment from the federal government." United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co., No. 20-1922, ___ F.4th ___, 2021 WL 2933212, at *2 (3d Cir. July 13, 2021)("Farfield")(citing 31 U.S.C. § 3729(a)(1)(A)-(G), (b)(2)).

Private persons, called relators, are authorized by the FCA to bring *qui tam* actions on behalf of the United States against persons or entities who knowingly submit false claims to the federal government.  While the Government has a right to intervene and assume responsibility for prosecuting the action, if it declines to do so, the relator may pursue the action on behalf of the United States and in either case is eligible to collect a portion of any damages awarded. Richards, 29 F. Supp. 3d at 561 (citing 31 U.S.C. §§ 3730(b)(4), (c)(1), (d)).

Relator brings claims under Count I under 31 U.S.C § 3729(a)(1)(A), which provides that "any person who (A) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval … is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation

Adjustment Act of 1990 … plus 3 times the amount of damages which the Government sustains because of the act of that person."  31 U.S.C. § 3729(a)(1)(A).

At Count II, Relator seeks liability under Section 3729(a)(1)(B), which provides that any person who "(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable for the same penalty.

For purposes of both sections of the FCA, "knowingly" is defined as follows:

(1) the terms "knowing" and "knowingly" --

    (A) mean that a person, with respect to information--

        (i) has actual knowledge of the information;
        (ii) acts in deliberate ignorance of the truth or falsity of the information; or
        (iii) acts in reckless disregard of the truth or falsity of the information; and

    (B) require no proof of specific intent to defraud[.]

31 U.S.C. § 3729(b)(1).

"Claim" "means any request or demand, whether under a contract or otherwise, for money or property" that--

    (i)      is presented to an officer, employee, or agent of the United States; or

    (ii)     is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

        (I)     provides or has provided any portion of the money or property requested or demanded; or

        (II)    will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded

31 U.S.C.A. § 3729 (b)(2).  And, as relevant here,  a "material" false statement is one that has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

**B.      Sufficiency of Allegations under Rule 9(b)**

Defendants move for dismissal under Rule 9(b) of the Federal Rules of Civil Procedure because Relator fails to allege facts establishing that Defendants "made any specific claim for payment, what it included, who submitted it and when, to whom, why it was false and fraudulent, and some indication that shows the defendants knew of its false and fraudulent nature at the time they submitted it."  ECF No. 57 at 18.  According to Defendants, under controlling precedent, a viable FCA claim must plead "specific invoices, context, dates, amounts, submissions, etc.," were presented for payment and, without these facts, the Court must improperly "*presume*" details necessary to state a claim.  Id. (italics in original).  Relator responds that Defendants misstate the law.  The Court agrees.

In Foglia v. Renal Ventures Management, LLC, 754 F.3d 153 (3d Cir. 2014), the United States Court of Appeals for the Third Circuit reversed the district court's dismissal of a relator's complaint that failed to identify examples of specific false claims, setting forth the time, place, and contents of claims made to the Government.  Id. at 155.  The Third Circuit explained that the purpose of Rule 9(b) is to "provide[] defendants with fair notice of the plaintiff's claims" and, as applied to FCA claims, determined that a "nuanced reading" of pleading requirements was appropriate. Id. at 156. This reading considers both "the text of the FCA, which does not require that the exact content of the false claims in question be shown," and the longstanding approach by the Third Circuit that has "never 'held that a plaintiff must identify a specific claim for payment *at the pleading stage* of the case to state a claim for relief." Id. (emphasis in original) (quoting

United States *ex rel.* Wilkins v. United Health Group, Inc., 659 F.3d 295, 308 (3d Cir. 2011),

*abrogation on other grounds recognized by* United States *ex rel* Freedom Unlimited, Inc. v. City

of Pittsburgh, PA, 728 F. App'x 101, 106 (3d Cir. 2018)). Thus, "it is sufficient for a plaintiff to

allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead

to a strong inference that claims were actually submitted.'" Foglia, 754 F.3d at 156 (quoting United

States *ex rel.* Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)).

  In United States *ex rel.* Customs Fraud Investigations, LLC v. Victaulic Company, 839

F.3d 242 (3d Cir. 2016), the Third Circuit again reversed the district court's dismissal of a relator's

complaint and concluded that the heightened pleading standard of Rule 9(b) was met despite the

omission of details identifying specific dates, places, and items that defendant allegedly

fraudulently marked for import to avoid otherwise applicable tariffs. The Third Circuit found that

the omission of these details was not fatal at the pleading stage, given that the complaint contained

allegations sufficiently describing the scheme employed and the opportunity for fraud. In addition,

only the defendant had access to the documents that readily could prove or disprove the relator's

well-pled allegations. Vitaulic, 839 F.3d at 258.

  Here, as in Foglia and Vitaulic, Relator pleads the alleged fraudulent scheme with sufficient

particularity to meet the requirements of Rule 9(b). Relator cites several specific instances, with

approximate dates, conduct, and impacted contracts, where Defendants allegedly manipulated

timekeeping records to assign employee hours spent working on unrelated matters to specific DOE

contracts and awards. In the First Amended Complaint, Relator alleges that Defendants acted with

the express purpose of incorporating mislabeled employee hours into reports or invoices submitted

to the Government for payment. See, e.g., ECF No. 50 ¶ 62 ("Defendant Frepoli emailed an FPoli

employee that 'moving forward (including this week), stop charging to SBIR04 [EMRALD SIBR]

until further notice and charge to RISA so we can improve a little the cash.").   The details provided in First Amended Complaint thus place Defendants on notice of the misconduct at issue and describe a scheme that, like the scheme in <u>Foglia</u>, admits of two possible scenarios: one fraudulent, and one that admits of no reasonable utility, but is supported by reliable indicia to infer that Defendants submitted false claims for payment. ECF No. 50 ¶¶ 58-64,68-70. And, as in <u>Foglia</u> and <u>Victaulic</u>, only Defendants possess the billing and time-keeping records "that could easily prove the claim one way or another." <u>Foglia</u>, 754 F.3d at 158. Under these circumstances, the  burden under Rule 9(b) is met.

Defendants next assert that if Relator's claims can proceed, the lack of specific details requires the Relator's FCA claim to be limited to the instances identified in the First Amended Complaint or to the 9-month period for which Relator provides examples.  ECF No. 57 at 21-23. Defendants contend that extending the claim beyond this precise period, based on Relator's "information and belief" that Defendants employed the scheme for all FPoli Government contracts, would improperly extrapolate allegedly fraudulent activity in violation of Rule 9(b)'s particularity requirement.  Relator concedes that there is "some measure of extrapolation," but argues that the examples provided in the First Amended Complaint reveal a broader scheme, and are detailed enough to support inclusion of all awards and contracts entered into with the Government for the period 2016 through 2021. ECF No. 59 at 10-11.

The Court finds that at this early stage of the litigation, the described scheme and cited examples of manipulated timekeeping meet the heightened pleading standard of Rule 9(b) to permit Relator's claim to include the full five-year period placed at issue.  <u>See</u>, <u>e.g.</u>, <u>United States ex rel.</u> <u>Mooney v. Americare, Inc.</u>, No. 06-cv-1806, 2013 WL 1346022 *7 (E.D.N.Y. April 3, 2013) (under stringent pleading requirements in circuit, complaint sufficiently identifies twelve

examples of fraudulent alteration of Medicare claims in detail "to justify permitting the whole fraudulent alteration scheme pertaining to Medicare claims to survive the motion to dismiss."). *Cf.*, United States ex rel. Jackson v. DePaul Health Sys., 454 F. Supp. 3d 481, 493 (E.D. Pa. 2020) (at summary judgment stage, the trial court found inadmissible proposed expert testimony that defendant's submission of seven inaccurate and false forms reflected a greater number of false claims where expert failed to provide indicia of reliability such as methodology used to determine how many other false forms defendant submitted, including sampling or other statistical techniques, from which he could reliably extrapolate).

Thus, at the pleading stage of the litigation, the Court accepts, as it must, that the well-pleaded factual allegations set forth in the First Amended Complaint are true and thus that Defendants falsified time records to support claims submitted for payment by the DOE. The scheme to manipulate timekeeping for billing purposes for work not performed on an assigned contract is sufficiently described to give Defendants adequate notice of the claims against them. For these reasons, the Motion to Dismiss for failure to meet Rule 9(b)'s particularity requirements for pleading is properly denied.

### C.    Materiality

Defendants next argue that dismissal under Rule 12(b)(6) is warranted because Relator has not sufficiently pled that the allegedly false timekeeping records or alleged misrepresentations of a compliant financial management system were material to the Government's payment decisions. ECF No. 57 at 25-29. In this regard, Defendants point to Relator's failure to allege that either compliant financial management systems or accurate time records for billing purposes were conditions of payment under each contract or award. Defendants also contend that Relator does not allege facts establishing that the Government consistently refuses to pay claims where these

deviations are present. Id. at 27.  Defendants' assertions on these grounds far too narrowly interpret applicable precedent or raise substantial issues of fact that are inappropriate at this early stage of the litigation.

The Third Circuit has explained that "[a] materiality inquiry under the FCA is a holistic, totality-of-the-circumstances examination of whether the false statement has 'a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." Farfield, 2021 WL 2933212, at *18 (quoting 31 U.S.C. § 3729(b)(4); and citing Escobar, 136 S. Ct. at 2003-04). Thus, the "Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." Escobar, 136 S. Ct. at 2003.  "[P]roof of materiality can include, but is not necessarily limited to, evidence that the *defendant* knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory,  or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material" Id. at 2003-04 (emphasis added).

Relator alleges that Defendant Frepoli knew that if the Government was aware manipulated timekeeping records were submitted for billing, the Government would refuse to pay. ECF No. 50 ¶¶ 55-56, 66-68. Defendants therefore directed employees to create a shadow time records to document employee hours to support invoices submitted to the Government for payment.  Id. Allegations that Defendants directed employees to manipulate their time and to create "clean records" to match the invoices submitted for payment plausibly state that Defendants knew accurate reporting would result in the Government refusal to pay for employee time expended on unrelated projects. Under these circumstances, the First Amended Complaint sufficiently alleges

that the allegedly fraudulent time records were material to the Government's decision to pay to state an FCA claim.

Defendants also assert that Relator's claim regarding repeated certification of a compliant financial management systems is "doomed" to the "rule" that an FCA claim is not stated "unless payment is conditioned on that certification." ECF No. 57 at 26. However, in United States *ex rel.* Freedom Unlimited, Inc. v. City of Pittsburgh, Pennsylvania, No. 17-1987, 728 F. App'x 101 (3d Cir. 2018), the Third Circuit explained that Escobar "made clear that … requirements need not be express 'conditions of payment' to trigger FCA liability. The Supreme Court determined that whether a defendant's failure to comply with administrative regulations gives rise to liability requires a determination of whether the defendant's non-compliance, if discovered, would have been 'material to the Government's payment decision.'" Thus, a defendant's failure to disclose noncompliance with material statutory, regulatory or contractual requirements may create liability under the FCA, even if not "expressly designated as a condition of payment." Id., 728 F. App'x at 106.

In Farfield, the Third Circuit acknowledged that "[p]ost-Escobar, courts decide whether regulatory compliance is an express condition of payment based on what the regulation *requires the defendant to do* under the federal contract or program, not whether the Government must act in response." Farfield, 2021 WL 2933212, at *20 (emphasis in original). Relator's failure to provide specific examples of the Government's refusal to pay therefore is not conclusive as to the materiality of Defendants' alleged misrepresentations. Instead, the complaint need only allege facts that reasonably infer that a defendant's misrepresentation of compliance with regulatory or contract requirements would, if known to the Government, impact its decision to pay. The First Amended Complaint satisfies this requirement.

In this regard, the parties have not provided the Court the relevant contracts and awards, but the First Amended Complaint identifies several regulatory requirements for compliant financial management systems to obtain the cited federal awards and contracts. These include the requirement that non-federal entities use a system that permits tracing funds to document that funds have been used in accordance with federal statutes, regulations, and the terms and conditions of the federal award, 2 C.F.R. § 200.302(a); as well as a requirement that a recipient's financial management system support charges and, if employees work on multiple activities, that the system is able to produce personnel activity reports which: "(i) [r]eflect an after the fact distribution of the actual activity of each employee; (ii) [a]ccount for the total activity for which each employee is compensated; and (iii) are prepared at least monthly." 10 C.F.R. § 600.311(a)(4)(i)-(iii). ECF No. 50 ¶¶ 14-17.

The Court accepts as true the allegation by Relator that "[o]n various dates during the contracting process, the specific dates to be determined, Defendants certified, among other things, that they would comply with all award terms and conditions, including that they would make claims under the federal grant award projects only for work performed on those projects." ECF No. 50 ¶ 41. The Court also considers (1) Relator's allegations describing Defendants' failure to disclose, either at contract formation or when submitting claims or invoices for payment, the lack of a compliant financial management system; (2) discrete examples of Defendants' knowing violation of regulatory and contract requirements through the manipulation of employee timekeeping and the maintenance of shadow recordkeeping; (3) the Government's alleged lack of knowledge of these misrepresentations; (4) plausible allegations that "DOE would not have approved the grant awards, entered into the contracts, nor made payments under the contracts, if it knew that the certifications were false"; and, (5) that the Government paid invoices reflecting

manipulated timekeeping.[2] Id. ¶ 46.  At this juncture, Relator has plausibly pled the materiality of Defendants' alleged misrepresentations regarding required certifications to state an FCA claim.

Finally, the Court finds unpersuasive Defendants' inference that the Government's decision not to intervene in Relator's *qui tam* action reveals that no material violation of the contracts or awards has occurred.  ECF No. 57 at 13 ("[h]aving had almost a year to review the Complaint, any supporting evidence and information … the Government informed the Court that it saw no reason to intervene.") (emphasis in original).  See also, id. at 27 (citing failure to intervene as a basis for insufficient pleading of materiality).  The Third Circuit characterized this approach as a "*trompe l'oeil,*" because "intervention decisions are, at best, of minimal relevance" to a determination of materiality given that consideration of the Government's participation would undermine the purposes of the FCA to permit relators to act on its behalf to recover improperly claimed funds.  Farfield, 2021 WL 2933212, at *22. Thus, the Court will not weigh the Government's failure to exercise its right to intervene in determining whether the alleged violations are material.

Because Relator has sufficiently pled FCA claims, the Court will deny the Motion to Dismiss pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is properly denied.  The following Order is entered:

---

[2] Defendants' assertion that the Government's continued payment of invoices after the initial filing of this lawsuit is indicative of the lack of materiality raises issues of fact not properly before Court at the pleading stage and thus has not been considered in resolving the pending Motion to Dismiss.

# ORDER

Upon consideration of Defendants' Motion to Dismiss, ECF No. 56, and the briefs filed by the parties in support and in opposition thereto, ECF Nos. 57, 59, and 60, and for the reasons stated in the accompanying Memorandum, IT IS HEREBY ORDERED that the Motion to Dismiss is denied.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

Dated: August 10, 2021

*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing

17